**In the Matter of the LAURETTI CORPORATION, Debtor.**

**Bankruptcy No. 2–84–00846.**

United States Bankruptcy Court, D. Connecticut.

March 7, 1986.

---

Nicholas L. Marien, Bristol, Conn., for debtor.

Robert A. Izzo, Elliot, Forgione, Stanek & Izzo, Southington, Conn., for Citizens Nat. Bank of Southington, creditor.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

This matter is before the court in this chapter 11 case on a motion of The Lauretti Corporation (debtor) for determination of the amount of a debt owed by it to Citizens National Bank of Southington (Bank). No evidentiary hearing has been held, the parties having stipulated to the following facts.

On April 19, 1983, the debtor executed a $500,000.00 demand promissory note payable to the Bank. Rocco T. Lauretti and Donna Lauretti executed the note as co-makers. Several parcels of realty secured the note, some owned by the debtor and others by the co-makers. The value of the debtor's property exceeds the amount of the obligation under the note. Until demand, the note calls for monthly principal payments of $4,200.00 and monthly interest payments. The note contains two provisions concerning interest payable on the principal balance. The first provides:

> This is a variable interest loan. The beginning interest rate is 11.50% per annum. The Bank may at any time increase or decrease the interest rate to be 1.00 percentage points (referred to as the differential) higher than the "Citibank N.A. prime rate," a rate for preferred customers charged by a large New York bank. The differential over or under the "Citibank N.A. prime rate" may be

changed by the Bank upon 15 days notice to the borrower.

The second provision states:

Upon demand, the amount owing shall consist of the sum of unpaid principal and earned interest, plus any outstanding late charges. The undersigned agree that, upon demand, the amount owing shall bear interest at an annual rate of 20.00% until paid in full.

On November 23, 1983, the Bank notified the debtor and co-makers that "[t]he differential over 'Citibank N.A. prime rate' will be increased to two (2.00%) percentage points. This represents an increase of one (1.00%) percentage point. The annual percentage rate, then, will be thirteen (13.00%) percent commencing December 12, 1983." A year later, on November 16, 1984, the debtor filed a chapter 11 petition in this court. On January 4, 1985, the Bank in writing notified the debtor and co-makers of its demand, pursuant to the second provision quoted above, that the entire loan be paid in full by January 18, 1985, and that the interest rate, as of January 4, 1985, was increased to 20 percent.

The parties' papers raise two issues: (1) whether the Bank was entitled under the terms of the note to increase the interest rate to 13 percent, and (2) whether the Bank's actions on January 4, 1985 constituted a violation of the automatic stay imposed by 11 U.S.C. § 362(a), or were otherwise contrary to bankruptcy law.

## II.

The Bank asserts that it had the right to increase the differential over the Citibank N.A. prime rate (prime rate) to any amount it chose pursuant to the first paragraph quoted above and that it was not bound by a one percentage point limit. If this is so, any stated interest rate in the note is illusory and there is no limit to what the Bank can charge. I do not construe the language of the note in this unreasonable manner.

The intent of parties to a contract is ascertained by a reasonable construction of written words accorded their common, natural and ordinary meaning sensibly applied. *Marcus v. Marcus,* 175 Conn. 138, 141–42, 394 A.2d 727 (1978). The phrase allowing the Bank to change the differential upon 15 days' notice must be construed in light of the sentence preceding it, which provides that "[t]he Bank may at any time increase or decrease the interest rate to be 1.00 percentage points (referred to as the differential) higher than the 'Citibank N.A. prime rate'...." This clause establishes a ceiling of one percent over the prime rate for the interest chargeable on the obligation (in the absence of a demand, which will be considered below). The reading advanced by the Bank would give it the ability to establish any interest rate it chose, merely upon 15 days' notice. Even if this were a reasonable meaning, when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it and most strongly against the party whose language it is and for whose benefit it is inserted. *Sturman v. Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983). That party is the Bank. Accordingly, the Bank's attempt to increase the differential to two percent over prime was unauthorized and ineffective.

## III.

On January 4, 1985, after the debtor filed its voluntary petition, the Bank demanded that the debtor pay the entire amount of unpaid principal and earned interest by January 18, 1985. At the same time, the Bank asserted it was increasing the interest rate on the amount owing to 20 percent.

The debtor contends that the Bank's actions on January 4 constituted a violation of the automatic stay imposed by 11 U.S.C. § 362(a). Specifically, the debtor claims that the Bank's actions were proscribed by §§ 362(a)(5) and (6), which extend the stay to:

    .     .     .     .     .

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose be-

fore the commencement of the case under this title[.]

I find § 362(a)(5) inapplicable to the actions taken by the Bank. From the stipulated facts, the Bank's letter of demand cannot be characterized as an act to create, perfect or enforce a lien against property of the debtor.

The second provision of the note states that *"upon demand,* the amount owing shall bear interest at an annual rate of 20.00% until paid in full." (Emphasis added.) The January 4 Bank demand letter indicates that this was the Bank's understanding:

> The Lauretti Corporation has a demand loan note with Citizens National Bank dated April 19, 1983 with an amount financed of $500,000. As of the date of this letter, Citizens National Bank demands that you pay the entire loan by January 18, 1985.... Also, in accordance with the terms outlined in the note, the interest rate on this loan is 20.00% from the date of this *demand.*

(Emphasis added.) The note makes it clear that a demand by the Bank is a condition precedent to the increase of the interest rate to 20 percent. The effectiveness of the increase initially may depend upon the validity of the Bank's demand that the entire amount of the note be paid within 14 days of the January 4 letter.

■ The Bank's demand, in literal terms, violated the automatic stay. This demand constituted an "act to collect ... a claim against the debtor that arose [prepetition]," § 362(a)(6). Congress intended that § 362(a)(6) "prevent[ ] creditors from attempting *in any way* to collect a prepetition debt." H.R.Rep. No. 595, 95th Cong., 1st Sess. 342, *reprinted at* 1978 *U.S. Code Cong. & Ad. News* 5787, 5963, 6298 (emphasis added). The protection of the automatic stay goes beyond judicial proceedings against the debtor; postpetition collection letters have been held violative of § 362(a)(6). *Underwood v. DeLay (In re DeLay),* 48 B.R. 282, 284 (W.D.Mo.1984); *Doughtie v. Stoughton Elec. & Water Util. (In re Doughtie),* 39 B.R. 950, 952 (Bankr.W.D.Wis.1984). Since the Bank's

demand may reasonably be construed as a violation of the automatic stay, its action was void, *Kalb v. Feuerstein,* 308 U.S. 433, 438–40, 60 S.Ct. 343, 345–47, 84 L.Ed. 370 (1940), and the interest rate increase did not become effective.

■ There is, however, another, more fundamental and clearly established, reason why the attempted increase in the interest rate was ineffective. Such an increase would be inconsistent with the equitable principles underlying determination of allowance of claims. The general rule is that when the debtor is insolvent, postpetition interest on prepetition debt is not allowed in bankruptcy. One exception to this rule allows an oversecured creditor to include such interest as part of its secured claim. Section 506(b) of the Bankruptcy Code provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This section, enacted in 1978, is consistent with prior law. *See Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 164, 67 S.Ct. 237, 240–41, 91 L.Ed. 162 (1946). Since the parties have stipulated that the value of the debtor's property securing the obligation to the Bank is greater than the amount of the debtor's obligation, including interest, some measure of interest is allowable.

In deciding what measure of interest is allowable, the debtor's financial condition is significant. Here, the debtor is insolvent. In the event of liquidation or under the debtor's pending plan, holders of allowed unsecured claims will be receiving only a portion of those claims. Thus, if the Bank were permitted to increase its interest from 12 percent to 20 percent, prejudice would run to other creditors, not the debtor.

Such a result would be inconsistent with the principles underlying allowance of claims. In *Vanston, supra,* interest on

bonds secured by debtor's property fell due during a receivership, and pursuant to court order was not paid. The entire amount was declared due and payable, and by the terms of the note, interest was chargeable on the unpaid interest. While the debtor's assets securing the bonds were sufficient to pay the bondholders the interest on interest, subordinate creditors would have thereby received a reduced share. The Supreme Court held that allowing interest on interest in such an instance would conflict with the equitable principles governing bankruptcy distributions.

In *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir.1959), the debtor was declared in default under a note on the basis of commencement of reorganization proceedings against it. The note provided that upon acceleration interest would increase from four to six percent. Although the court of appeals approved payment of interest at the increased rate of six percent, the court based its decision squarely on the fact that the debtor was solvent. "[W]e hold that the Supreme Court did not intend that the principle enunciated by it in *Vanston*, in a contest between creditors, should be applied to a contest between a debtor's creditors and its stockholders." 269 F.2d at 830. The emphasis placed by the *Ruskin* court on the debtor's solvency strongly suggests that the contractual provision in that case, calling for increased interest upon the commencement of reorganization proceedings, would not have been enforced had the debtor been insolvent. Such is the case here. The debtor is insolvent, and the Bank seeks the benefits of a contractual provision increasing its interest rate from 12 to 20 percent based upon a postpetition demand. To honor the increase would prejudice subordinate creditors, not the debtor. *Cf. Ruskin v. Griffiths*, 269 F.2d at 831. The fact that the property securing the Bank's obligation is sufficient to cover the increased interest did not make the increase valid in *Vanston*, and it will not do so here.

The language of § 506(b), *supra* p. 754, has led to differences of opinion on what rate of interest courts should allow. Some courts hold that § 506(b) requires interest at the contract rate if there is such a provision, *see In re Loveridge Machine and Tool Co.*, 36 B.R. 159, 161–63 (Bankr.D. Utah 1983); others have disregarded the contract rate in the name of equity, *see In re Marx*, 11 B.R. 819, 821 (Bankr.S.D. Ohio 1981); while still others conclude that § 506(b) does not require any specific rate, but that the existence of a contractual provision for interest raises a presumption that that is the proper rate, *see Maimone v. Columbia Savings Bank (In re Maimone)*, 41 B.R. 974, 978–79 (Bankr.D.N.J. 1984). The statute certainly does not prohibit use of the contractual rate of interest, and I find that the rate for computing the amount of interest accruing from the date of the petition shall be the contract rate as heretofore determined. It is

SO ORDERED.