**In re Donald F. KINGSLEY and Mary Ellen Kingsley, d/b/a Dons Package Store, d/b/a Womens World, Debtors.**

**Bankruptcy No. 5–84–00127.**

United States Bankruptcy Court,
D. Connecticut.

May 16, 1988.

---

1. The debtors have not objected to the interest portion of the State's administrative claim. It is therefore unnecessary to decide whether interest accrues on post petition—preconfirmation taxes, which has sharply divided the courts, *see, e.g., In re Gould & Eberhardt Gear Machinery Corp.*, 80 B.R. 614, 615 (D.Mass.1987); *In re*

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for debtors.

Joan E. Pilver, Asst. Atty. Gen., Hartford, Conn., for State of Conn.

Daniel Meister, Norwalk, Conn., Chapter 13 Trustee.

**MEMORANDUM AND ORDER ON OBJECTION TO CHAPTER 13 PLAN**

ALAN H.W. SHIFF, Bankruptcy Judge.

The State of Connecticut objects to confirmation of the debtors' Second Amended Chapter 13 Plan on the ground that it fails to provide for the post confirmation payment of interest on post petition taxes. The question here is whether Code § 1322(a)(2) requires such interest payments. For the reasons that follow, I conclude that it does not.

I

On March 1, 1984, the debtors filed a petition under chapter 13 of the Bankruptcy Code. On November 13, 1987, the State of Connecticut filed an objection to confirmation of the debtors' First Amended Plan "on the grounds that the plan does not propose full payment of its priority debt as required by 11 U.S.C. §§ 1322(a)(2) and 1305(a)." On the same date, the State filed a document entitled "Request for Payment of State Taxes Administrative Expenses", asserting a claim for sales taxes for the periods ending December 31, 1986, June 30, 1987, and September 30, 1987 in the aggregate amount of $3,309.38, including accrued interest[1] and penalty as of November 3, 1987. The State's claim is based upon unpaid sales taxes collected by the debtors from customers of their package store.[2] On November 18, 1987, the debtors filed a Second Amended Plan. Paragraph 3 of that plan provides that "[t]he Administrative claim of the State of Connecticut

*American International Airways, Inc.*, 77 B.R. 490, 494 (Bankr.E.D.Pa.1987). *In re General Polymerics Corp.*, 54 B.R. 523, 525 (Bankr.D. Conn.1985).

2. State's Memorandum of Law at 2.

for sales taxes in the amount of $3,309.38 shall be paid 100% without interest." Although a separate objection has not been filed, the State argues that it is entitled to the payment of interest during the post confirmation deferred payment of its tax claim. Both parties agreed during oral argument that the resolution of this controversy depends on the meaning of § 1322(a)(2).[3]

## II

As a general rule, interest on an allowed prepetition claim, other than a claim secured by property the value of which is greater than the amount of the claim, stops accruing as of the filing of a bankruptcy petition. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163–64, 67 S.Ct. 237, 240–41, 91 L.Ed. 162 (1946). That pre-Code concept has been codified by Code § 506(b), *see*, H.R.Rep. No. 595, 95th Cong., 1st Sess., 356–57 (1977); Sen.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787; *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 826 (Bankr.S.D.N.Y.1982), which in turn has been the subject of considerable debate and controversy as to the extent of the prohibition against post petition interest. Those who propose interest as a part of their allowed claims argue that they are entitled to the same contract and statutory rights and rates they had prior to the commencement of the case, while those who object argue that the elimination of post petition interest is necessary to achieve bankruptcy policies such as fresh start and equitable distribution. In general, courts have resolved this conflict in favor of the bankruptcy estate. For example, the Supreme Court recently noted that Congress drafted Code § 506(b) in recognition of pre-Code policy of not allowing an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal. The court therefore declined to include within an undersecured creditor's right to adequate protection under

§ 362(d)(1), reimbursement, i.e., interest, for the loss of use of collateral during the stay. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates*, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). And even when a creditor is oversecured and the allowance of interest is appropriate under § 506(b), it has been held in recognition of "equitable principles governing bankruptcy distributions," that the contract rate should be reduced when the debtor is insolvent. *See In the Matter of The Lauretti Corporation*, 86 B.R. 751 (Bankr.D.Conn.1986), *citing Vanston Bondholders Protective Committee v. Green, supra*, 329 U.S. at 163, 67 S.Ct. at 240. Other courts have declined to include taxing authorities among oversecured creditors entitled to interest under § 506(b), reasoning that the pre-Code and § 506(b) exception applied only when the debtor voluntarily executed a security agreement. *See In re Newbury Cafe, Inc.*, 841 F.2d 20 (1st Cir.1988); *In re Ron Pair Enterprises, Inc.*, 828 F.2d re Ron Pair Enterprises, Inc., 828 F.2d 367 (6th Cir.1987); *cert. granted*, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 420 (1988); *In re Nevada Environmental Landfill*, 81 B.R. 55 (Bankr.D.Nev.1987); *Contra, Best Repair Co., Inc. v. United States*, 789 F.2d 1080 (4th Cir.1986); *In re Busone*, 71 B.R. 201, 203 (Bankr.E.D.N.Y.1987) (and cases summarized therein).

## III

Section 1322(a)(2) states:

The plan shall provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.

11 U.S.C. § 1322 (1982). Under 507(a)(1), administrative expenses allowed under § 503(b) are entitled to a first priority status. Under § 503(b), an administrative expense is allowed for "any tax incurred by the estate," 11 U.S.C. § 503(b)(1)(B)(i) (1982), and for any penalties relating to

---

**3.** The State has agreed to defer its objection under § 1305(a) and reserves the right to file a

proof of claim under that section in the event of an adverse ruling here.

that tax, 11 U.S.C. § 503(b)(1)(C) (1982). Here, unpaid sales taxes were incurred by the estate and, together with interest [4] and penalties, are administrative expenses with a first priority status under § 507(a)(1) entitled to "full payment, in deferred cash payments" under § 1322(a)(2).

Although the traditional starting point in any exercise of statutory interpretation is the statute itself, congressional intent as to § 1322(a)(2) cannot be discerned without reference to other sections that relate to the treatment of deferred payment of allowed claims. As the *Timbers* Court reminds us, statutory construction is a "holistic endeavor". "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear". 108 S.Ct. at 630.

Section 1129(a)(9), like § 1322(a)(2), provides for the treatment of priority claims under § 507(a), but unlike its chapter 13 counterpart, § 1129(a)(9) separates those claims into three categories. Subsection (a)(9)(A) provides, *inter alia*, for a cash payment in full on the effective date of the plan of the allowed amount of § 507(a)(1) claims. Subsection (a)(9)(C) provides, *inter alia*, that the holders of claims under § 507(a)(7) "will receive on account of such claim deferred cash payments ... of a value, as of the effective date of the plan, equal to the allowed amount of such claim."

The distinction between subsections (a)(9)(A) and (a)(9)(C) is intentional. Under the former, claims are to be paid in full on the effective date of the plan. In contrast, under the language employed by (a)(9)(C) and other sections, claimholders are entitled interest to preserve the present value of their claims. See also, §§ 1129(a)(7)(A)(ii), 1129(a)(7)(B), 1129(a)(9)(B)(i), 1129(b)(2)(A)(i)(II), 1129(b)(2)(B)(i), 1129(b)(2)(C)(i), 1173(a)(2), 1225(a)(4), 1225(a)(5)(B)(ii), 1225(b)(1)(A), 1228(b)(2), 1325(a)(4), 1325(a)(5)(B)(ii), 1325(b)(1)(A), 1328(b)(2).

As this court observed in *In re Connecticut Aerosols, Inc.*, 31 B.R. 883, 885 (Bankr. D.Conn.1983), *aff'd*, 42 B.R. 706 (D.Conn. 1984),

As is clear from both the language of section 1129(a)(9)(C) and its legislative history, the debtor's right to defer payments is not to be at the expense of the claimant's right to receive the full amount of his allowed claim.

Tax claims entitled to priority under 507(a)(6) ... may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax with *the present value equal to the amount of the claim.* [emphasis added]

124 Cong.Rec. H 11,103 (daily ed. Sept. 28, 1978); 124 Cong.Rec. 17,420 (daily ed. Oct. 6, 1978). Thus, interest must be applied to the Government's claim to assure that it receives the value equal to the allowed amount of its claim despite the deferred payments. *In re Bay Area Services*, 26 B.R. 811, 10 B.C.D. 101 (Bkrtcy.M.D.Fla.1982); *In re Moore*, 25 B.R. 131, 9 B.C.D. 1246 (Bkrtcy.N.D.Tex. 1982). *But see In re Burgess Wholesale Mfg. Opticians, Inc.*, 16 B.R. 733 (Bkrtcy.N.D.Ill.1982).

*See also, In re Camino Real Landscape Maint. Contractors*, 818 F.2d 1503 (9th Cir.1987); *United States v. Neal Pharmacal*, 789 F.2d 1283, 1285 (8th Cir.1986); *In re Southern States Motor Inns, Inc.*, 709 F.2d 647, 650 (11th Cir.1983) *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Matter of Burgess Wholesale Mfg. Opticians, Inc.*, 721 F.2d 1146, 1147 (7th Cir.1983); *In re Architectural Design, Inc.*, 59 B.R. 1019 (D.W.D.Va.1986).

Courts reviewing other sections employing identical language have reached this same conclusion. *See e.g., In re Edgewater Motel, Inc.*, 85 B.R. 989, 991–92 (Bankr.E.D.Tenn.1988) (§ 1129(a)(7)(A)(ii)); *In re Eisenbarth*, 77 B.R. 228, 234 (Bankr. D.N.D.1987) (same); *Neal Pharmacal Co., supra*, 789 F.2d 1283, 1284 n. 2 (§ 1129(a)(7)(B)); *In re Vermont Stove Co.*,

---

**4.** See footnote 1 *supra*.

**20**

*Inc.,* 69 B.R. 87, 89–90 (Bankr.D.Vt.1987) (§ 1129(a)(9)(B)(i)); *Matter of Southern States Motor Inns, Inc., supra,* 709 F.2d 647, 652 n. 6 (11th Cir.1983) (same); *Timbers of Inwood Forest Associates, supra,* —— U.S. ——, 108 S.Ct. 626, 633 (§ 1129(b)(2)(A)(i)(II)); *In re Ahlers,* 794 F.2d 388, 400 (8th Cir.1986), *rev'd on other grounds,* —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (same); *In re American Mariner Industries, Inc.,* 734 F.2d 426, 433 (9th Cir.1984) (same); *In re Hansen,* 77 B.R. 722, 726 (Bankr.D.N.D.1987) (1225(a)(4)); *In re Paul,* 83 B.R. 709, 715 (Bankr.D.N.D. 1988) (§ 1225(a)(5)(B)(ii)); *In re Kloberdanz,* 83 B.R. 767, 769–71 (Bankr.D.Colo. 1988) (same); *In re Hardy,* 755 F.2d 75 (6th Cir.1985) (§ 1325(a)(4)); *In re Rimgale,* 669 F.2d 426, 430 (7th Cir.1982) (same); *In re Corley,* 83 B.R. 848, 850 (Bankr.S.D.Ga. 1988) (same); *In re Terry,* 780 F.2d 894, 896 (11th Cir.1985) (§ 1325(a)(5)(B)(ii)); *In re Rhein,* 73 B.R. 285 (Bankr.E.D.Mich. 1987) (§ 1325(b)(1)(A)). *See also* legislative history of § 1124(3)

> "Value as of the effective date of the plan," as used in paragraph (3) and in proposed 11 U.S.C. 1179(a)(7)(B), 1129(a)(9), 1129(b), 1172(2), 1325(a)(4), 1325(a)(5)(B), and 1328(b), indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan. The discounting should be based only on the unpaid balance of the amount due under the plan, until that amount, including interest, is paid in full.

H.R.Rep. No. 595, 95th Cong., 1st Sess., 408 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Thus it has been consistently held that when Congress intended to provide a claimholder with interest to compensate for the present value of a claim, it expressly provided for that treatment by the use of specific words, such as, *"value, as of the effective date of the plan equal to the allowed amount of such claim".* The absence of those words in § 1322(a)(2) could not have been an oversight. The Supreme Court has recognized that "[w]here Congress includes particular language in one section of a statute but omits it in another

section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

*In re Ridgley,* 81 B.R. 65 (Bankr.D.Ore. 1987) supports this conclusion. There, the Internal Revenue Service argued that § 1322(a)(2) requires interest payments as part of a priority claim to compensate for the present value of the claim to be paid over time. 81 B.R. at 69. The *Ridgley* court rejected that argument:

> it is clear that Congress has drafted certain sections of the Code to require the court to take into consideration a present value factor in approving plan payments. *See* §§ 1129(a)(9)(C), 1129(b)(2)(A)(i)(II), 1325(a)(5)(B)(ii). Section 1322(a)(2) is not one of them. This court must assume the difference in statutory language was not unintentional.

81 B.R. at 70. I agree with the *Ridgley* court and conclude that interest is not payable under § 1322(a)(2).

Other courts have also stated this conclusion. *See, e.g., In re Rogers,* 57 B.R. 170, 173 n. 3 (Bankr.E.D.Tenn.1986) ("[u]nlike chapter 11, a priority claim in a chapter 13 plan need not be paid with interest in order to pay the 'present value'. The chapter 13 plan need only provide for full payment of the amount of the claim without any interest"); *In re Brown,* 51 B.R. 284, 285 (Bankr.D.D.C.1985) (the payment of tax claims in interest free installments is "allowed under chapter 13 (*see* 11 U.S.C. § 1322(a)(2)) but not chapter 7 ..."); *In re Burgess Wholesale Mfg. Opticians, Inc.,* 16 B.R. 733, 736 (Bankr.N.D.Ill.E.D.1982) *rev'd on other grounds,* 721 F.2d 1146 (7th Cir.1983) ("A priority unsecured tax claim, as in the instant case, would be subject to the provisions of 11 U.S.C. § 1322, under which no court has held the Government is entitled to post-petition interest"); *Matter of Herr,* 80 B.R. 135 (Bankr.S.D.Iowa 1987) (reaching same conclusion under § 1222(a)(2) which is identical to § 1322(a)(2)). *See also,* 5 *Collier On Bankruptcy,* ¶ 1322.03 (15th ed. 1986);

*Norton Bankruptcy Law and Practice* ¶ 91.06 (1987).

## IV

"Chapter 13 [was] designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor." Sen.Rep. No. 989, 95th Cong., 2d Sess., 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The absence of present value language in § 1322(a)(2) advances that policy. The State's objection is overruled,

AND IT IS SO ORDERED.