**In re Carl R. RIDGLEY and Leona Kay Ridgley, Debtors.**

**Bankruptcy No. 687–06526–W13.**

United States Bankruptcy Court, D. Oregon.

Dec. 4, 1987.

Barry L. Taub, Eugene, Or., for debtor.

Charles H. Turner, U.S. Atty., Dist. of Or., Gerald W. Douglas, Sp. Asst. U.S. Atty., Portland, Or., for creditor.

MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The parties have consented to entry of a final order by a bankruptcy consultant. The debtors filed a Chapter 13 bankruptcy petition on March 20, 1987. The United States of America, Department of Treasury, the Internal Rev-

enue Service filed a proof of claim for taxes which had been duly assessed in 1981, 1982 and 1983 and for which notices of tax liens had been properly filed in 1982 and 1983. The taxes listed in the claim are income taxes for 1980 through 1982 in the amount, including pre-petition penalties and interest, of $7,064.31 and withholding and FICA taxes for 1981 in the amount, including pre-petition penalties and interest, of $1,326.46.

In their schedules the debtors indicate equity in personal property of $3,002. Of this, they have claimed all but one gun and $230 in cash exempt pursuant to § 522(b)(2). The exempt personal property consists of vehicles, household goods, clothing and jewelry. The schedules indicate the debtors have no equity in their residence.

The debtors' first plan provided for monthly payments of $10 until May 1988 when they would increase to $165. Paragraph 2(b) provided for the IRS as a secured creditor to the extent of $1,300 to be paid at 6% per year over 12 months commencing in May, 1988 at $120 per month. The plan stated: "The payments to be paid to the IRS on the secured claim above, shall be credited only to the balance due for Form No. 941 taxes for tax year 1981." Paragraph 2(c) provides that priority debts are allowed in full in the order prescribed in § 507 of the Bankruptcy Code. Paragraph 2(d) allows for unsecured creditors to be paid at the approximate composition rate of 23%.

On June 19, 1987, the debtors filed a modified plan. It is identical to the first plan except for Paragraph 2(b) which provides for the IRS as a secured creditor to the extent of $230 to be paid at $125 per month for two months commencing in May, 1988. It states:

"The payments to be paid to the IRS on the secured claim, above, shall be credited only to the balance due concerning taxes and interest, not penalties, for Form No. 941 taxes for the tax year 1981. Interest to be paid on the above secured claim shall be 9% per year compounded daily. The remainder of the claim of the IRS shall be paid as a general unsecured claim with regards to income taxes owed by the debtor and penalties on withholding taxes, but shall be paid as a priority claim with regards to the balance owed for taxes and interest, and not penalties, for 1981 Form No. 941 taxes."

This court held a confirmation hearing on the first plan. At that time the IRS appeared and filed a written objection to the plan on a number of bases. I allowed the debtors 20 days to file a written memorandum in response and the IRS an additional five days to reply. At the time the debtors filed their response they filed a modified plan. After the IRS filed its reply the debtors filed another unsolicited brief and the IRS responded to it. The court has taken into consideration the arguments in all briefs due to the technical nature of the subject addressed. Although the debtors' modified plan has not been noticed nor a hearing held thereon only the IRS has objected to the plan and only the IRS is affected by the changes in the modified plan. The IRS's arguments are applicable to the terms of either plan except for the issue of the appropriate discount factor on the secured claim to which the plaintiffs have conceded in their modified plan. Thus it is appropriate for me to treat the terms of the modified plan as those which are before me for consideration.

The parties agree that to the extent the income tax obligation is not secured it is a general unsecured debt. They further agree that to the extent the withholding/FICA tax obligation is not secured it remains a priority debt pursuant to the provisions of 11 U.S.C. § 507(a)(7)(C).

The debtors argue they may, through the provisions of 11 U.S.C. § 522(h), exercise the powers granted to the trustee under 11 U.S.C. § 545(2) to avoid the IRS tax lien to the extent they can exempt the property burdened by the lien. They argue further that, as to that portion of the IRS claim which remains secured (the nonexempt property) the debtors may, pursuant to the holdings in *In re Technical Knockout Graphics, Inc.*, 68 B.R. 463 (Bankr. 9th

Cir.1986) and *In re Venice Printing Co., Inc.*, BAP No. CC86–1421 MoMev (Bankr. 9th Cir. Apr. 15, 1987) allocate payments thereon to the unpaid tax of their choosing. As indicated in paragraph 2(b), they have chosen to allocate those payments to the withholding/FICA tax obligation.

The IRS makes several counter arguments. First it states a Chapter 13 debtor may not utilize the trustee's avoiding powers under 11 U.S.C. § 545(2). As a first alternative it argues the fixing of an IRS lien is not a "transfer of property" within the meaning of § 522(h). As a second alternative it argues that even if the debtor generally is authorized, pursuant to § 522(h), to avoid transfers to the extent an exemption may be claimed in the burdened property, under these particular facts the provisions of § 522(c)(2)(B) and § 522(f) do not allow such avoidance here.

Further, the government objects to the debtors' method of allocation of moneys paid on any secured claim which the court finds it has. Citing *In re Junes*, 76 B.R. 795 (Bankr.D.Or.1987) for the proposition that Chapter 13 payments are involuntary, it states it has the authority to allocate such involuntary payments in any manner to maximize the amount of tax collected. *Liddon v. U.S.*, 448 F.2d 509 (5th Cir.1971). Under the facts before the court such allocation would result in the payments made on the secured claim being allocated by the Internal Revenue Service first to the unpaid income tax obligation, with the withholding/FICA obligations being paid in full under the provisions of paragraph 2(c) of the plan.

Initially this court notes Bankruptcy Rule 7001 requires an adversary proceeding to be filed if issues regarding the validity, priority and extent of liens are to be determined. On the other hand Bankruptcy Rule 3015 requires a debtor to file a Chapter 13 plan addressing the treatment of all creditors within 15 days of the bankruptcy filing. More commonly therefore, in the context of Chapter 13, issues regarding the extent and validity creditors' liens reach the court through objections to plan terms. The IRS has not objected to the method by which the issues regarding their proposed treatment under the plan have reached the court for decision. Therefore I shall treat any right the IRS might have had to have their status determined within the context of an adversary proceeding as having been waived.

This court does not find it necessary at this time to decide whether a debtor under Chapter 13 has the power to exercise the trustee's so-called "strong-arm powers" generally found in Chapter 5 of the Bankruptcy Code. It is clear that such power is specifically granted to a debtor under § 522(h) to the extent that he meets the preconditions established by that statute. The Ridgleys are relying on the authority granted them under § 522(h) to avoid the government's lien.

The IRS has raised only one objection to the debtors' use of § 522(h) which arises out of the intrinsic language of the statute itself. It has stated the fixing of a lien is not a "transfer of property" within the meaning of § 522(h). For purposes of the Bankruptcy Code "transfer" is defined in 11 U.S.C. § 101(50) as:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

This definition is very broad and has been generally recognized to include the fixing of an involuntary lien on property. *See*, 2 *Colliers on Bankruptcy* ¶ 101.50 n. 1, at 101–84 (15th ed. 1987), *citing, Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901). Sections 544, 545, 547, 548, 549 and 724 which establish the trustee's strong-arm powers and which are enumerated under § 522(h)(1) encompass the broad definition of "transfer" found in § 101(50).

■ The court does not agree with the government that the provisions of § 522(f) do not allow the debtors to use the power which otherwise appears to be available to them under § 522(h). The government

does not elaborate on its theory. This court assumes it believes the language found in § 522(f) which refers to avoiding the "fixing of a lien on an interest of the debtor in property" establishes the exclusive means by which a debtor may avoid the fixing of a lien. This is clearly not correct because, as has been pointed out, the definition of "transfer" is broad enough to include the fixing of a lien.

It has been established in this district that a tax lien is a statutory lien and not a judicial lien within the meaning of § 522(f)(1). *In re Zerger*, 35 B.R. 42, 44 (Bankr.D.Or.1983). Therefore § 522(f) has nothing to do with the issues before the court.

█ As the notice of tax lien here was properly filed, this court does agree with the IRS that the provisions of § 522(c)(2)(B) prohibit the debtors from using the power otherwise available to them under § 522(h) to avoid a tax lien on the personal property they have claimed exempt under § 522(b)(2).

The House and Senate Reports describing the purpose behind § 522(c) state:

Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The bankruptcy discharge does not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. *Cf. Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935).

S.Rep. No. 989, 95th Cong. 2nd Sess. 76 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5862, *reprinted in* 3 Appendix *Colliers on Bankruptcy* (15th edition).

Subsection (c) insulates exempt property from prepetition claims, except tax and alimony, maintenance or support claims that are excepted from discharge. The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. *Cf. Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935).

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6317, *reprinted in* 2 Appendix *Colliers on Bankruptcy* (15th edition).

Unfortunately a drafting error was made in former § 522(c) which created some ambiguity as to what effect exercise of the avoiding power under § 545(2) had on a tax lien. Prior to July 10, 1984, under the Bankruptcy Reform Act of 1978, § 522(c) read:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except—

. . . . .

(2) a lien that is—

. . . . .

(C)(i) a tax lien, notice of which is properly filed; and

(ii) avoided under section 545(2) of this title.

11 U.S.C. § 522(c) (1978).

The language of what was then § 522(c)(2)(C)(ii) seemed to suggest that if a tax lien were avoided through the exercise of power under § 545(2) exempted property *would* be liable for the tax obligation. Congress completely removed the language of what was then § 522(c)(2)(C)(ii) by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 453, 98 stat. 333, 375 (1984).

The court notes there are few bankruptcy cases addressing the effect of § 545(2) on properly filed tax liens. *Matter of Coan*, 72 B.R. 483 (Bankr.M.D.Fla.1987), holds that Chapter 13 debtors may exercise the trustee's avoiding power under § 545(2)

to invalidate an otherwise properly filed tax lien. In that case Judge Paskay does not address the effect of § 522(c) under the facts, nor is it clear from those facts whether the property affected by the lien would have been exempt under the provisions of § 522(b).

The debtors have cited *In re Blanchard,* No. 683–07992 (Bankr.D.Or. order filed Oct. 15, 1984), one of this court's unpublished decisions, in support of their position. When *Blanchard* was decided this court did not hear argument on the effect of § 522(c) on the debtor's avoiding power under § 522(h) nor did it address that issue.

■ At the time the Internal Revenue Service assessed the taxes against the debtors a lien arose. 26 U.S.C. § 6322. This lien is in favor of the United States and attaches to all the debtor's property. 26 U.S.C. § 6321. 26 U.S.C. § 6334 enumerates that property which is exempt from levy to satisfy this broad lien. This exemption from levy does not render the government's claim for taxes unsecured as to that property for purposes of treatment under the Bankruptcy Code. *In re Beckstead,* No. 387–01960–H13 (Bankr.D.Or. Oct. 29, 1987). Therefore, the government has a secured claim against the Ridgleys to the extent of the equity in their property or $3,002.

On inquiry this court has learned that *In re Technical Knockout* and *In re Venice Printing* both have been appealed to the Ninth Circuit Court of Appeals. Because of the present unsettled state of the law in Oregon on the allocation issue raised by the parties before me and because of the imminent decision on this issue from the Ninth Circuit I decline to address it at this time. This court has calculated that, assuming the IRS has a $3,000 secured claim, on the figures herein the two allocation methods proposed result in payment by the debtors to the Internal Revenue Service of either $4,239 plus 9% interest or $5,261 plus 9% interest.

Under the particular facts of this case the debtors are not hindered, meanwhile, in proposing a new plan which provides for the Internal Revenue Service's secured claim and continuing to make payments to the trustee. If this court confirms a plan in this case, when the Court of Appeals issues its decision in either *In re Technical Knockout* or *In re Venice Printing* the trustee and the Internal Revenue Service may make the appropriate allocation on their books for credit towards the debtor's tax obligations. Any new plan the debtors propose should provide for payment over a period of time sufficient to allow payment of the larger amount.

The government cites §§ 1325(a)(4) and 1322(a)(2) in support of the position that the debtors must provide for payment of both prepetition interest as part of its priority claim as well as a discount factor to compensate it for the present value of its claim which is to be paid over time. It is not clear to the court that the debtors have any disagreement with the first proposition. However, because there is ambiguity on this point in the memoranda submitted to me, I will address that issue.

■ Section 1322(a)(2) provides for full payment of priority claims. 26 U.S.C. § 6601(e) provides that interest on any tax is to be treated in all respects under the Internal Revenue Code like the underlying principal tax obligation. Although interest is not specifically included in the language of § 507(a)(7) which delineates those taxes which qualify for priority treatment, that section does refer to "allowed unsecured claims". There is nothing in the Bankruptcy Code which *per se* prevents any unsecured claim which includes earned prepetition interest from being allowed. Courts generally have included payments of earned prepetition interest as part of the priority claim to be paid in full under § 1322(a)(2) and this court concurs. *In re Barbier,* 77 B.R. 799, 800–801 (Bankr.D. Nev.1987) (*See, also,* cases cited therein).

■ The court assumes the Internal Revenue Service is not arguing the debtors are required to pay postpetition interest on its claim which was unmatured at the time the petition was filed. Any such interest is disallowed. 11 U.S.C. § 502(b)(2). The government does not explain in what man-

ner it believes § 1325(a)(4) supports its position regarding the payment of postpetition interest as a discount factor. I assume that they are suggesting that the language of that statute, which requires the court to determine that the present value of payments to unsecured claims must equal what the creditor would *receive* in a Chapter 7 liquidation, applies to priority creditors and that, as under Chapter 7 the government would be *entitled* to 100% payment on its claim, due to deferred payment it must necessarily receive interest.

The court disagrees with that analysis. First, although in an individual Chapter 7 case tax priority claims are not dischargeable and thus they must be paid in full either through bankruptcy liquidation or later, there is no guarantee in every case there will be sufficient assets upon liquidation in a bankruptcy estate to pay the priority claims in full. Section 1325(a)(4) only requires payment to unsecured claims to the extent there is property in the bankruptcy estate, upon liquidation, to pay those claims.

 Second, and more importantly, § 1322(a)(2) deals specifically with priority claims in Chapter 13. Thus its language on the subject controls. It is clear that Congress has drafted certain sections of the Code to require the court to take into consideration a present value factor in approving plan payments. *See* §§ 1129(a)(9)(C), 1129(b)(2)(A)(i)(II), 1325(a)(5)(B)(ii). Section 1322(a)(2) is not one of them. This court must assume the difference in statutory language was not unintentional. The debtors are not required to provide the government with interest on its priority claim representing a discount factor for payment of the claim over time.

Finally, the government states the plan violates § 1326(a)(1) in that it provides that the debtors make minimum monthly payments until May, 1988. It argues the debtors are required to make equal monthly payments under the plan. Section 1326(a)(1) does not delineate the fractional size of a debtors' monthly plan payment, nor is the court aware of any other Code section under the chapter that does. Under § 1325 the court is required to confirm a plan if all the provisions of that section have been met. One of these provisions is § 1325(a)(6) which requires a finding the debtors will be able to make all payments under the plan. In determining whether the requirements of this subsection have been met the court must review the debtors' income and expenses. As most plans cover a period of at least three years it is to be expected that the debtors' income and expenses might not remain static while they make their plan payments. The size of payments called for by the plan should have the flexibility to take that fact into consideration. What the court must determine, ultimately, is whether there are sufficient funds being paid through the plan over its lifetime to satisfy its terms.

 The debtors are not free, however, to arbitrarily make minimum payments into the plan over a period of time. The size of the payments must have a rational connection to the debtors income and ·expense flow. *See* §§ 1325(b)(1)(B) and 1325(b)(2). The court will review the Ridgley's income and expense flow at the time of the confirmation hearing.

For the reasons stated the court shall enter an order denying confirmation of the debtor's Chapter 13 plan.

This opinion shall constitute the court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 as made applicable to this court by Bankruptcy Rule 7052; they shall not be separately stated.