In re Daisy M. FERGUSON, Debtor.

In re Henrietta C. REAVES, Debtor.

In re John W. WETHINGTON and M. Wethington, Debtors.

Bankruptcy Nos. 90–11698–BKC–AJC, 90–11693–BKC–RAM, 90–10149–BKC–RAM.

United States Bankruptcy Court, S.D. Florida.

Dec. 13, 1991.

Jose Franciso De Leon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Robert L. Roth, Trustee, Miami, Fla., standing Chapter 13 Trustee.

Jordan Bublick, Miami, Fla., for debtors.

Lynn H. Gelman, Office of the Asst. U.S. Trustee, Miami, Fla.

Before SIDNEY M. WEAVER, Chief Bankruptcy Judge, and A.J. CRISTOL and ROBERT A. MARK, Bankruptcy Judges, En Banc.

## MEMORANDUM OPINION

The United States of America, on behalf of the Internal Revenue Service ("IRS"), has filed motions to modify the plans confirmed in each of these Chapter 13 cases. Because the three motions raise virtually identical issues which will reoccur frequently in this district, the standing Chapter 13 Trustee requested *en banc* determination of the motions by the three sitting judges of this Court. The Court granted the request and heard argument *en banc* on June 20, 1991.

The issues before the Court concern the timing of tax payments entitled to priority under 11 U.S.C. § 1322(a)(2). The primary question is whether a debtor must pay IRS priority tax claims in equal monthly payments starting in the first month of the plan. If the payments must begin in month one, we face the second question—must the Debtors immediately cure all arrearages in these required monthly payments?

On June 20, 1991, the Court conducted an *en banc* hearing and heard argument from the IRS, the Chapter 13 Trustee and counsel for the Debtors. Upon consideration of the arguments presented in Court and in the memoranda submitted by the parties, upon review of the relevant case authority, review of the applicable statutes and legislative history, the Court concludes that the IRS' motions should be granted in part and denied in part. The Debtors must modify their plans to specifically provide for full payment of the priority tax claims. However, neither the statute nor any controlling authority requires that these payments be made in equal monthly installments from the beginning of the plans.

*Chapter 13 Practice and Procedure in the Southern District of Florida*

The motions to modify arise from proofs of claim filed by the IRS after confirmation of the Debtors' respective plans. Since the practice of conducting confirmation hearings before the bar date for filing claims is not common to all courts, we start with a brief explanation of Chapter 13 practice and procedure in this Court.

Pursuant to B.R. 3015 [1], a debtor filing a Chapter 13 plan is required to file a plan within 15 days of the date of filing the petition. When the plan is filed, the standard order sent to creditors in this district schedules both the meeting of creditors pursuant to 11 U.S.C. § 341 and the confirmation hearing for the same day. Rule 3002(c) fixes the last day for filing claims 90 days after the first date set for the meeting of creditors. Therefore, in a typical case, the plan will be confirmed before all claims are filed. Generally, the IRS does not appear at confirmation and does not file its claims until after the confirmation hearing. The IRS asserts that it does not have the resources to file proofs of claims prior to the § 341 meeting, or to appear on the day of the creditors meeting and confirmation hearing to object to plans.

Due to the expedited manner in which Chapter 13 plans are confirmed in this district, there is a standard modification policy used by the Chapter 13 Trustee which enables the Trustee upon the expiration of the bar date to seek modifications of the plans and payment schedules. After the IRS files its claims, the Trustee mails a letter to the debtor informing the debtor that a tax claim has been filed and requesting that the debtor file an amended Chapter 13 plan to specifically provide for payment of the claim. The letter states that the amended plan may not materially alter the treatment of the existing creditors under the previously confirmed plan. This allows the Trustee to consider timely filed claims filed after the date of confirmation

---

1. The amendments to the Bankruptcy Rules, which, among other things, changed the name of the rules to the Federal Rules of Bankruptcy Procedure, did not include any revisions to Rule 3015.

and provides a mechanism for ensuring that all allowed claims are properly treated.

The confirmation orders signed by the judges in this district also protect the IRS' rights under plans confirmed before the IRS files its claims. At the suggestion of the Trustee and the IRS, the standard confirmation orders specifically reference potential priority claims by the IRS in the following provision:

> Any claim filed by the IRS entitled to priority under 11 U.S.C. Section 507 shall be paid in full, in periodic installments, in the order of priority prescribed by the Bankruptcy Court over the period of the plan, as required by 11 U.S.C. Section 1322(a)(2) with post-petition interest required by 11 U.S.C. Section 506(b), payable on the secured portion of the claim.

*See e.g.,* Order Confirming First Amended Chapter 13 Plan signed by this Court on January 7, 1991, in *Reaves.*

Thus, under existing practice and procedure in this Court, the IRS is protected at confirmation (even though they do not appear) by an order providing specifically for payment of all ultimately filed and allowed priority tax claims. Moreover, at the request of the Trustee or the IRS, the Court will require modifications in confirmed plans if priority tax claims are filed and allowed in an amount exceeding the amount, if any, included in the plan at confirmation. What the IRS seeks here is not just modification, but retroactive modification to require its claims to be paid from month one of the plans. Whether the Bankruptcy Code compels this result is the issue we address.

With this standard practice and procedure as a backdrop, we now turn to the particular facts of the three cases.

### BACKGROUND FACTS

*In re Ferguson, 90–11698–BKC–AJC.* Daisy Ferguson filed a Chapter 13 petition on April 2, 1990. An amended plan was filed on May 29, 1990. On June 24, 1990, the Court confirmed Ferguson's 60 month plan. The plan provides for payments of $1768.77 for administrative expenses consisting of attorney fees and trustee fees, and mortgage payments to be made during months 1 through 36. The primary feature of the plan is a 36 month cure of $16,394.57 in total arrearages owed to the holder of the first mortgage on Ferguson's home. Following the mortgage cure payments, the plan provides for payments of $646.76 per month in months 37 through 60 for unsecured creditors.

The plan includes a provision providing for deferred payments of priority claims, but does not provide any specific payments for priority taxes. Although the Debtor did not file tax returns for the years 1987, 1988 and 1989, she claimed that she was uncertain as to whether there were priority taxes owed and no claim was filed prior to confirmation.

On July 25, 1990, the IRS filed a timely proof of claim asserting priority taxes owed in the amount of $15,000.00 and a general unsecured claim in the amount of $1500. In its January 14, 1991 Motion to Modify the Plan, the IRS claims that the plan must be modified to provide for the IRS to receive its $15,000 priority claim by payments of $250.00 per month for the sixty month duration of the plan. The IRS also asserts that the $250.00 per month payments are retroactively due from the first month of the plan and that all arrearages must be promptly cured.

*In re Reaves, 90–11693–BKC–RAM.* The *Reaves'* facts are similar to *Ferguson.* Henrietta Reaves filed a Chapter 13 petition on October 4, 1990. An amended plan was filed on November 23, 1990. On January 7, 1991, the Court confirmed Reaves' 60 month plan. The plan provides for payments of $933.80 per month for months 1 through 36 for administrative expenses and mortgage payments. The primary feature of the plan is a 36 month cure of $9408.52 in total arrearages owed to the holder of the first mortgage. Following the mortgage cure payments, the plan provides for payments of $372.27 per month in months 37 through 60 for unsecured creditors.

The Reaves' plan also provides for full, periodic payments of priority claims to be paid during the life of the plan, but, as in

*Ferguson,* the Debtor stated that no priority taxes were owed at the time the plan was confirmed. The IRS filed a timely proof of claim in the amount of $7,500.00 representing estimated tax liability for the years, 1987, 1988 and 1989. Based upon its proof of claim, it asserts that the plan must be modified to provide for payments of $125.00 a month retroactive to the first payment that was made under the plan.

*In re Wethington, 90–10149–BKC–RAM.* John W. Wethington and Mary M. Wethington filed their chapter 13 petition on January 18, 1990. On March 26, 1990, the Court confirmed Wethington's 42 month plan. The plan provides for payments of $1924.35 per month for months 1 through 36 for administrative expenses and mortgage payments. The primary feature of the plan is a 36 month cure of $17,024.20 in total arrearages owed to the first mortgage holder on Wethingtons' home.

The Wethington plan also includes payment of an estimated $12,000 in priority taxes in deferred and unequal payments. In months one through thirty-six, during the mortgage cure period, only $200.00 per month is allocated to the IRS. Following the mortgage cure payments, the plan provides for payments of $800.00 per month in months 37 through 42 to the IRS.

Although the plan reflects total priority taxes owed in the amount of $12,000.00, the IRS' post-confirmation but timely proof of claim reflects priority taxes owed in the amount of $17,926.67. In its motion to modify, the IRS argues that this entire amount must be paid in equal monthly installments and applied retroactively to the first month of the plan. This is the only case amongst these three in which the Debtor specifically provided for payments to the IRS. Still, the IRS objects because the payments are not equal. Instead, the plan provides for the bulk of the tax payments to be made only after the mortgage arrearage is cured.

## DISCUSSION

■ Section 1322(a)(2) of the Bankruptcy Code ("Code") states that "[a Chapter 13] plan *shall* —provide for the full payment in *deferred cash payments* of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim" (emphasis added).

The IRS and the Trustee agree that § 1322(a)(2) requires full payment of priority tax claims during the life of the plan. The conflict arises over the meaning of the language "deferred cash payments." The IRS argues that the language requires equal payments over the life of the plan with payments starting in the first month of the plan. The Trustee and Debtors argue that nothing in the statute requires equal payments, particularly equal payments starting in month one. In the Trustee's view, plan payments for priority tax claims may be deferred until mortgage arrearages are cured or otherwise paid in varying amounts as long as full payment is made during the life of the plan.

We are persuaded that the Trustee is correct. First, the statute does not say what the government wants it to say. Consistent with the Supreme Court's interpretation of other Code provisions in recent years, we refuse to read in a requirement that Congress did not expressly include in the statute. Second, to the extent that "deferred cash payments" has the same meaning in § 1129(a)(9)(C) as it does in § 1322(a)(2), the better reasoned authority does not interpret the phrase to require equal monthly payments beginning at confirmation of a Chapter 11 plan. Finally, we believe that the government's restrictive interpretation is inconsistent with a congressional intent to provide Chapter 13 debtors with flexibility in structuring their plans. Each of these reasons is discussed below.

### 1. *The Plain Language of the Statute Does Not Require Equal Monthly Payments*

It is undisputed that the IRS has a right to full payment during the life of the plan pursuant to 11 U.S.C. § 1322(a)(2) and § 507(a)(7). There is no provision which requires that priority tax payments be made during a specific time within the life

of the plan, or that the payments be made simultaneously with payment to secured creditors.

■ The absence of language directing the timing of priority tax payments is significant, particularly in contrast to the specific language in § 1326 which mandates the timing of payments for administrative claims. Specifically, § 1326(b)(1) states "before or at the time of each payment to creditors under the plan there *shall be paid*—(1) any unpaid claim of the kind specified in section 507(a)(1) of this title." § 507(a)(1) priority claims include administrative expenses allowed under § 503(b). Thus, this provision requires that payments of administrative claims be made before or simultaneously with the first payments made under the plan. *See e.g., In re Lanigan,* 101 B.R. 530 (Bankr.N.D.Ill.1986).

Pursuant to § 503(b)(4) attorneys fees are designated as an administrative expense. Therefore, under the Code, fees may be paid either before or simultaneously with creditors' claims, so long as the payment of attorney's fees begins no later than the first payment to creditors. *Lanigan* citing to *In re Parker,* 21 B.R. 692, 694 (E.D.Tenn.1982); *See also In re Shorb,* 101 B.R. 185 (9th Cir. BAP 1989).

The holdings in these cases derive from the special protection Congress afforded administrative expenses. This special treatment requiring payments for administrative claims to begin with the first payment under the plan is not afforded to tax claims. If the congressional intent when enacting this section was to require that monthly payments be made to the IRS from the commencement of the plan, then Congress would have specifically cited to § 507(a)(7) in the payment provision in § 1326(b).

In the absence of such language in the statute and any controlling or persuasive authority supporting the government's

view, this Court will not bestow this added protection to the IRS. Our opinion is based on the principle that Congress drafted the Code to provide for certain priorities. If it failed to provide for a given situation, the silence of the Code should be accorded meaning. Accordingly, this Court will interpret the Code to mean what is plain on its face instead of inferring what Congress might have written.

Our refusal to read into the statute a requirement not plain on its face is consistent with the Supreme Court's methodology and analysis in several recent opinions. *See Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

In *Davenport,* the Court held that criminal restitution claims are dischargeable in Chapter 13 cases. In rejecting the creditor's argument that Congress did not intend for these types of claims to be discharged, the Court analyzed § 1328 and noted that "... the statutory language plainly reveals Congress' intent not to except restitution orders from discharge in certain Chapter 13 proceedings." *Davenport* 110 S.Ct. at 2133. The Court further stated that "where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms." *Id.* at 2134.[2]

In *Toibb v. Radloff,* the Court focused on the plain language of § 109 in determining whether an individual debtor not engaged in business was eligible to file for relief under Chapter 11. In its analysis the Court stated:

The Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer the exclusion of certain classes of debtors from the protections of Chapter 11, be-

---

**2.** After the *Davenport* decision, Congress specifically amended § 1328(a) to add a provision excepting from discharge criminal restitution debts. *Criminal Victims Protection Act of 1990,* Pub.L. No. 101–647, effective Nov. 15, 1990. This statutory change does not affect our analy-

sis. Our point is that the Supreme Court will not read requirements or limitations into otherwise clear language in the Bankruptcy Code. The decision by Congress to amend the statute changes the law but does not change the manner in which courts should interpret the Code.

cause Congress took care in § 109 to specify who qualifies—and who does not qualify—as a debtor under the various chapters of the Code. *Toibb*, 111 S.Ct. at 2199. Congress has limited debtor eligibility in other chapters of the Code. Its failure to specifically limit eligibility in Chapter 11 indicates its intention to not so limit Chapter 11 filings. Thus, as in *Davenport*, the Supreme Court employed negative inference analysis, that is, drawing an inference from what is *not* written, in reaching its decision.

In *Johnson v. Home State Bank*, the Supreme Court was required to interpret the term "claim" in considering the limitations on serial filings under the Code. The debtor in *Johnson* included a mortgage lien in a Chapter 13 plan after his personal obligation secured by the mortgaged property had been discharged in a prior Chapter 7 case. The Court held that the lien remained a "claim" against the debtor which could be paid under a Chapter 13 plan. The Court observed that Congress had limited serial filings in other areas. Its failure to limit a Chapter 20 filing indicated its intent to not "categorically foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." *Johnson*, 111 S.Ct. at 2156.

Thus, following the direction of the Supreme Court in interpreting other provisions of the Code, we decline the government's invitation to read into the phrase "deferred cash payments" a requirement of equal payments over the life of the plan.

### 2. *Analogous Case Authority Supports The Trustee's Interpretation*

We are aware of no Chapter 13 cases squarely addressing the issue here. The Trustee relies on *In re Ridgley*, 81 B.R. 65 (Bankr.D.Or.1987), a Chapter 13 case in which the bankruptcy court held that the debtors were not required to make equal monthly payments. The Court determined that § 1326(a)(1) does not delineate the fractional size of a debtor's monthly plan payment. *Ridgley* at 70. *Ridgley* is supportive of the Trustee's view but that court was interpreting § 1326(a)(1), not specifi-

cally addressing the payment of priority claims under § 1322(a)(2).

The government urges us to follow and apply the holding in *In the Matter of Mason and Dixon Lines, Inc.*, 71 B.R. 300 (Bankr.M.D.N.C.1987). In *Mason*, the bankruptcy court held that "deferred cash payments" as used in § 1129(a)(9)(C) would normally require monthly payments commencing at confirmation. The IRS argues that *Mason* is correct in presumptively requiring debtors to follow the normal payment practice in the forum district in structuring their plans. Since monthly payments are the norm in Chapter 13 plans in this district, the government argues it is entitled to monthly payments of its priority claim.

To the extent that "deferred cash payments" means the same under both § 1129(a)(9)(C) and § 1322(a)(2), we reject the presumption in *Mason and Dixon* that deferred cash payments requires equal monthly payments commencing at confirmation. Our view is supported by two recent decisions criticizing the *Mason and Dixon* holding. *In re Volle Electric, Inc.*, 132 B.R. 365 (Bankr.C.D.Ill.1991); *In re Sanders Coal & Trucking, Inc.*, 129 B.R. 516 (Bankr.E.D.Tenn.1991).

In *Sanders Coal*, the United States objected to confirmation of the proposed Chapter 11 plan because the plan did not provide for payment of the government's $61,000 priority tax claim until secured claims were paid in full. As required by § 1129(a)(9)(C), the plan proposed to pay the claim in full with interest, but payments would not begin until about three years after confirmation.

■ Relying on *Mason and Dixon*, the government in *Sanders Coal* argued that "deferred cash payments" requires monthly installments beginning with the first month of the plan. The Court rejected the presumption in *Mason and Dixon* that monthly payments are required. Instead, it found the phrase "deferred cash payments" to have broad meaning such that

the proposed plan satisfied the "deferred cash payments" element of § 1129(a)(9)(C).[3]

The bankruptcy court in *Volle Electric* also rejected the government's restrictive interpretation of "deferred cash payments." In *Volle*, the government objected to Chapter 11 payments of its § 1129(a)(9)(C) claims in monthly payments which reduced the principal but left a balloon payment at the end of the plan. The court confirmed the plan over the objection finding that "the IRS' position on this issue [is] not supported by the plain language of the statute." 132 B.R. at 366. The court cited *Sanders Coal* favorably and also noted that "the common usage of 'deferred cash payments' suggests a flexible, rather than restrictive approach to determine whether a proposed plan of reorganization complies with § 1129(a)(9)(C)." 132 B.R. at 367, *citing In re Snowden's Landscaping Co.*, 110 B.R. 56 (Bankr.S.D.Ala.1990).

Although we are aware of no cases specifically interpreting "deferred cash payments" in § 1322(a)(2), we find the same flexibility in the phrase must exist in Chapter 13. In further support of our conclusion, we note that both *Collier on Bankruptcy* and Judge Lundin's Chapter 13 treatise reject the IRS' position. *Collier* notes that § 1322(a)(2) requires that tax claims be paid in full but observes that "there is no requirement that any of these priority claims, except for fees and administrative expenses, be paid temporally in the prescribed order of priority." 5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY, Paragraph 1322.03, at 1322–6 to 1322–7 (15th ed. 1991).

Judge Lundin expressly refers to the discretion afforded debtors under § 1322(a)(2):

> Deferred cash payments means that the total amount of the priority claim is divided into discrete payments through the plan on some specified basis. Debtors have much discretion how to defer payments of priority claims. For example, if

there will be monthly distributions to creditors, the debtor can propose a monthly payment to the holder of a priority claim—either a specific monthly amount or a pro rata distribution. The debtor can propose that priority claim holders be paid in deferred cash payments over the life of the plan as money is available. It may not be possible to predict exactly when payments will be made and in what amounts, but it is sufficient for purposes of § 1322(a)(2) that the plan proposes and is funded sufficiently to pay priority claims in full over the life of the plan.

KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, § 4 at 4–10 (1990).

We conclude that this discretion is provided by the Code.

### 3. A flexible Interpretation of "Deferred Cash Payments" is Consistent with Chapter 13 Policy

Finally, our decision here is consistent with the Congressional intent to provide Chapter 13 debtors with flexibility in structuring their plans. Chapter 13 was enacted by Congress to enable debtors to develop a feasible repayment plan under which creditors are paid over an extended period of time under court supervision. *See* DAVID S. KENNEDY, CHAPTER 13 UNDER THE BANKRUPTCY CODE, 138 (1989), *citing* H.R.REP. NO. 595, 95th Cong., 2d Sess. at 118, (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078. The policy behind Chapter 13 is to encourage individuals to pay their debts as opposed to simply obtaining a discharge under Chapter 7. We recognize this statutory goal and seek to preserve it. Were this Court to adopt the IRS position, many otherwise eligible Chapter 13 debtors who sought to pay creditors would become forced Chapter 7 Debtors with no other option, a result at odds with Congress' intent.

---

**3.** The *Sanders Coal* court denied confirmation because it did not find the three year suspension of payments "fair and equitable" under § 1129(b). The Court did reiterate that the payment rules of § 1129(a)(9)(C) allowed for the proposed payment schedule. The "fair and equitable" requirement in § 1129(b) is not applicable to our analysis here. Deferring payment of priority tax claims does not run afoul of the "good faith" requirement in § 1325(a)(3) or otherwise violate any applicable provisions of the Code.

## CONCLUSION

11 U.S.C. § 1322(a)(2) provides for the payment of § 507(a)(7) unsecured priority tax claims in full during the life of a Chapter 13 plan in deferred cash payments. These deferred cash payments need not start at the inception of the plan, but may be paid in periodic intervals over the life of the plan as determined by the individual debtor.

■ The foregoing conclusion does not lead to the outright denial of the IRS' motion. Modification of these plans to specifically include payment of the IRS' claims is necessary. Based upon the timely filing of a claim by the IRS within the 90 day period, modification of the plans in the *Ferguson* and *Reaves* cases is required in order to specifically provide for payment of the IRS priority claim. It is possible that these plans will now fail if the modification eliminates or unduly reduces payments to unsecured creditors. That issue is not yet before us. The *Wethington* plan will also require some payment adjustment to satisfy the increased priority claim.

Separate orders will be entered in each of the three cases in accordance with this Opinion.