**In re Keith J. KANOUSE, Debtor.**

**Keith J. KANOUSE, Plaintiff,**

v.

**GUNSTER, YOAKLEY & STEWART, P.A., a Florida professional association, Defendant.**

Bankruptcy No. 91–31544–RAM.

Adv. No. 93–0024–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

April 15, 1993.

Robert S. Hackleman, Ft. Lauderdale, FL, for defendant.

Gary Dunkel, W. Palm Beach, FL, for plaintiff.

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

ROBERT A. MARK, Bankruptcy Judge.

Defendant, Gunster, Yoakley & Stewart, P.A. ("Gunster"), seeks entry of a summary judgment in this adversary proceeding brought by Plaintiff/Debtor, Keith J. Kanouse ("Kanouse") under § 525(b) of the Bankruptcy Code. Since the Court finds that plaintiff cannot state a claim under that section, summary judgment for the defendant is granted.

### BACKGROUND

On January 8, 1993, Kanouse, an attorney, filed the instant adversary proceeding to recover damages against Gunster, a law firm and his former employer. The complaint alleges that Gunster discriminated against and "constructively discharged" Kanouse in violation of the anti-employment discrimination provisions of Section 525(b) of the Bankruptcy Code. Specifically, Kanouse alleges that Gunster discriminated against him due to his insolvency and his contemplation of commencing a bankruptcy case to discharge his unsecured obligations to various creditors, including one of Gunster's major banking clients. Kanouse left Gunster on November 2, 1990. All of the complained of acts of discrimination occurred seven months or more before Kanouse became a debtor by filing a petition for relief under Chapter 11 of the Bankruptcy Code on May 21, 1991.

On January 28, 1993, Gunster filed an answer to the complaint and simultaneously moved for summary judgment. Among other grounds, Gunster argues that Kanouse was not eligible to bring a construc-

tive discharge claim under Section 525(b) because he was not a "debtor" at the time of the termination of his employment with Gunster. As discussed below, the Court agrees and therefore grants Gunster's summary judgment motion.

## ANALYSIS

Section 525(b) provides a remedy to *"an individual who is or has been a debtor* under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt ..." 11 U.S.C. Section 525(b) (emphasis added). Section 525(b) bars employment termination or discrimination by a private employer against a debtor or former debtor solely because such debtor: (1) is or has been a debtor under the Bankruptcy Code; (2) has been insolvent before the commencement of a case under the Bankruptcy Code; or (3) has failed to pay a dischargeable or discharged debt.

The question before the Court is simple—may Kanouse seek relief under § 525(b) for alleged misconduct which occurred seven months prior to the filing of his petition. Given the plain, unambiguous language of the statute and the Supreme Court's mandate to derive meaning wherever possible, solely from the words of a statute, the result is clear. Section 525(b) provides no remedy for Kanouse.

In recent years, the Supreme Court has consistently[1] employed the plain meaning doctrine in interpreting sections of the Bankruptcy Code. In *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Court held that the Bankruptcy Code should be construed in accordance with the meaning of its plain language, except in the rare cases in which a literal application

would present a result demonstrably at odds with the intentions of its drafters. In the aftermath of *Ron Pair,* courts, including the Supreme Court, have repeatedly given effect to a plain language interpretation of the Bankruptcy Code. *See e.g., Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (plain language of Bankruptcy Code § 541(c)(2) establishes that anti-alienation provisions in a qualified ERISA plan constitute a restriction on transfer enforceable under "applicable nonbankruptcy law"); *Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (plain language of § 547(c)(2) does not exclude long-term debt from ordinary course defense to preference liability); *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (plain language of § 109 does not exclude individual debtors from seeking relief under Chapter 11); *In re Burns,* 887 F.2d 1541 (11th Cir.1989); *In re Ferguson,* 134 B.R. 689 (Bankr.S.D.Fla.1991)[2]; *In re Suarez,* 127 B.R. 73 (Bankr.S.D.Fla.1991).

This Court finds the language of Section 525(b) to be plain and unambiguous on its face. Section 525(b) prohibits a private employer from discriminating with respect to employment against "an individual who is or has been a debtor." Kanouse does not fall within the class of persons protected by the statute. Kanouse was neither a debtor nor former debtor at the time of the alleged acts of discrimination or at the time of the termination of his employment. *See Laracuente v. Chase Manhattan Bank,* 891 F.2d 17 (1st Cir.1989) (interpreting the language of Section 525(b) narrowly in accordance with its plain meaning).

Kanouse seeks a broader, more flexible interpretation of Section 525(b). He argues that Section 525(b) should be expansively construed to provide a remedy to an indi-

**1.** The Supreme Court's decision in *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) is a notable exception. Over Justice Scalia's strong dissent, the Court reviewed legislative history to derive its interpretation of "allowed secured claim" in Section 506(d). The Court returned to the plain view doctrine in the next bankruptcy case it decided *Patterson v. Shumate,* —— U.S. —— 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). For the strongest statements in support of the doctrine, read Justice

Scalia's dissent in *Dewsnup* and his concurring opinion in *Patterson v. Shumate,* —— U.S. at ——, 112 S.Ct. at 2250–2251.

**2.** In *Ferguson,* this Court issued an en banc opinion giving plain meaning to § 1322(a)(2) of the Bankruptcy Code, relying in part on the Supreme Court's decisions applying the plain meaning doctrine and negative inference rule.

vidual who *becomes* a debtor. This argument finds support in *Tinker v. Sturgeon State Bank*, 99 B.R. 957 (Bankr.W.D.Mo. 1989). That decision permitted an individual to bring a Section 525(b) claim even though she was fired from her job five days prior to filing for protection under the Bankruptcy Code.

In allowing the claim, the *Tinker* Court reviewed and quoted legislative history in deriving its interpretation of § 525(b):

"Under this section, no private employer may terminate employment of or discriminate with respect to employment against any person on the basis that person had been or will be a debtor in bankruptcy, or has suffered insolvency pending a discharge." (S.Rep. No. 98–65, 98th Long. 1st Sess. 80 (1983)).

99 B.R. at 960.

Based upon this report and the language in § 525(b)(2) which refers to "insolvency before the commencement of a case," the Court concluded that "it is not just the filing of a petition for relief that triggers the protection of 11 U.S.C. § 525(b)." Id.

*Tinker's* result may be fair under the facts of that case but this Court disagrees with its legal analysis. First, since the language of the statute is clear, it is not appropriate to consider legislative history. *See e.g. In re Burns*, 887 F.2d at 1545. Second, *Tinker* erroneously resorts to questionable legislative history in order to vary the unambiguous language of § 525(b). The legislative history relied upon in *Tinker* is not a report that accompanied the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), which Act included Section 525(b). Rather, *Tinker* relies upon a Senate report to the unenacted Omnibus Bankruptcy Improvements Act of 1983, which was but one of several stillborn bills that preceded the July 10, 1984 enactment of BAFJA by both houses of Congress. Thus, even if the Court considered legislative history, the indirect legislative history cited in *Tinker* is not a conclusive expression of congressional intent sufficient to overcome the clear command of the statute itself. *In re Burns*, 887 F.2d at 1551–1552.

The *Tinker* decision is also factually distinguishable from the instant case. *Tinker's* rationale is premised upon safeguarding against a race between an employer and a prospective debtor in which the employer seeks to fire the employee before the employee can file for protection under the Bankruptcy Code. The court in *Tinker* found this protection necessary where the debtor was fired just five days prior to the filing of a bankruptcy petition. The instant case does not present the "race" scenario troubling to the *Tinker* Court. Here, Kanouse waited 209 days after his resignation before he filed his Chapter 11 petition. Thus, to the extent that strong equitable considerations affected the *Tinker* decision, those considerations do not exist in this case.

### CONCLUSION

The undisputed facts establish that Kanouse was not a debtor or former debtor at the time of the alleged acts of discrimination by Gunster. As a matter of law § 525(b) affords no remedy. Having so determined, the Court declines to reach the other grounds asserted by Gunster in its summary judgment motion.

In light of the foregoing, it is hereby ORDERED and ADJUDGED as follows:

1. Defendant Gunster's motion for summary judgment is granted.

2. By separate order, final judgment will be entered in favor of Defendant, Gunster, and against Plaintiff, Kanouse.

DONE AND ORDERED.